**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| Steven Rodriguez Acetuno,<br><br>        Petitioner,<br><br>v.<br><br>Todd Blanche, Attorney General, United States Department of Justice,<br><br>Markwayne Mullin, Secretary, U.S. Department of Homeland Security,<br><br>Todd M. Lyons, Acting Director of Immigration and Customs Enforcement,<br><br>George Dedos, Warden, Cibola County Correctional Center,<br><br>Mary De Anda-Ybarra, Director of El Paso Field Office, U.S. Immigration and Customs Enforcement,<br><br>        Respondents. | Case No. 26-cv-1247<br><br><br>**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Expedited Handling Requested |

## INTRODUCTION

1.    Petitioner, Steven Rodriguez Acetuno, by and through counsel, hereby files this petition for a Writ of Habeas Corpus and a complaint for declaratory and injunctive relief to require U.S. Immigration and Customs Enforcement ("ICE") to release Mr. Rodriguez Acetuno from ICE detention or, in the alternative, provide Mr. Rodriguez Acetuno with a bond hearing.

1

2.      Mr. Rodriguez Acetuno is a citizen of Honduras. Mr. Rodriguez Acetuno entered the United States in 2016 with his mother and siblings. The family immediately turned themselves in. After spending three days in custody, he was released on his own recognizance. For the last decade, Mr. Rodriguez Acetuno has been living peacefully in California with his mother and three younger siblings. He has since graduated from high school, began college, and was working full time prior to his detention. Mr. Rodriguez Acetuno has complied with all lawful orders with respect to his immigration proceedings.

3.      Mr. Rodriguez Acetuno has no criminal history.

4.      On or around November 9, 2025, Mr. Rodriguez Acetuno was on a work trip in New York. He and several colleagues went to see Niagara Falls. Mr. Rodriguez Acetuno and his colleagues stepped onto the Rainbow International Bridge, a bridge that connects the United States to Canada. As he was exiting the bridge on the same side on which he came, he was stopped by border patrol. Even after reviewing his work permit and social security card, which demonstrated his eligibility to be in the U.S., border patrol agents detained Mr. Rodriguez Acetuno. They did not present Mr. Rodriguez Acetuno with a warrant, nor cite a statutory basis for his detention at that time.

5.      Mr. Rodriguez Acetuno was transferred to the Buffalo (Batavia) Service Processing Center in Batavia, New York and was subsequently transferred to the Cibola County Correctional Center, where he remains today.

6.      Mr. Rodriguez Acetuno's detention is unlawful for at least three reasons.

7.      **First**, due process requires that the government show, in a pre-deprivation hearing, materially changed circumstances before detaining Mr. Rodriguez Acetuno. The

2

government has not provided Mr. Rodriguez Acetuno with any evidence that his arrest is warranted, nor have they demonstrated that he is a flight risk or a danger to the community. On the contrary, Mr. Rodriguez Acetuno has built deep ties to the United States. As courts in this District have held in similar cases, Mr. Rodriguez Acetuno's detention without any pre-deprivation process violates his procedural due process rights and this alone warrants his immediate release. *See Ortiz Montaguano v. Bondi, et al.*, No. 1:26-cv-00288-DHU-GJF (D.N.M. Mar. 20, 2026) (granting habeas petition and ordering release of a detained immigrant where Government failed to provide a pre-deprivation hearing or show a change in circumstance demonstrating why re-detention is necessary.); *Chiliquinga Sigcho v. Castro, et al.*, No. 2:26-cv-00137-MIS-JFR (D.N.M. Feb. 20, 2026) (granting habeas petition of immigrant finding her "continued detention without a bond hearing violates her Fifth Amendment right to due process[.]")

8.    **Second**, the government has no legitimate interest in detaining Mr. Rodriguez Acetuno when he is neither a flight risk nor a danger—the only two constitutionally permissible reasons for immigration detention. Accordingly, his detention also violates his substantive due process rights, warranting his immediate release.

9.    **Third**, Mr. Rodriguez Acetuno was arrested without a warrant and without probable cause that he was a flight risk, under unlawful enforcement procedures that multiple courts across the country have declared illegal. Since then, there has been no determination that any probable cause exists to justify his detention. This violates his Fourth Amendment rights, as well as statutes and regulations, similarly mandating his release.

10.    Mr. Rodriguez Acetuno was apprehended in New York on or around November 9, 2025. He is currently detained within this district at the Cibola County Correctional Center in Milan, New Mexico.

11.    Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events giving rise to these claims occurred in this District.

12.    Venue is also proper under 28 U.S.C. § 2241(d) because Mr. Rodriguez Acetuno is in custody in this district. Venue is proper in a habeas corpus action in either the district court where the petitioner is in custody or in the district within which the petitioner was convicted and sentenced.

13.    For these reasons, Mr. Rodriguez Acetuno respectfully asks this Court to hold his arrest and detention unlawful; order restoration of the status quo prior to his detention, *i.e.* release without restraints on his liberty; order Respondents to transfer Mr. Rodriguez Acetuno back to California where he resides; and enjoin Respondents from re-detaining his without meaningful pre-detention process. If the Court does not grant immediate restoration of the status quo prior to detention, then Mr. Rodriguez Acetuno alternatively requests that this Court order bond hearing may be had, and that this Court enjoin Respondents from any further transfers outside of this District for the duration of such proceedings.

**JURISDICTION AND VENUE**

14.    This Court has jurisdiction to entertain this habeas petition under 28 U.S.C. 1331; 28 U.S.C. 2241; the Due Process Clause of the Fifth Amendment, U.S. Const. amend. V; and the Suspension Clause, U.S. Const. art. I, § 2.

15.    Federal question jurisdiction exists because Mr. Rodriguez Acetuno seeks to challenge Mr. Rodriguez Acetuno's custody as a violation of the Constitution.

16.    Federal district courts have jurisdiction under 28 U.S.C. § 2241 to hear habeas petitions by noncitizens challenging the lawfulness or constitutionality of their detention by the Department of Homeland Security ("DHS"). *Denmore v. Kim*, 538 U.S. 510 516-17 (2003); *Jennings v. Rodriguez*, 138 S. Ct. 830, 839-41 (2018); *Nielsen v. Preap*, 139 S. Ct. 954, 961-63 (2019).

17.    This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

18.    Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events giving rise to these claims occurred in this District.

19.    Venue is also proper under 28 U.S.C. § 2241(d) because Mr. Rodriguez Acetuno is or was detained at a facility within this District.

20.    Habeas corpus is "perhaps the most important writ known to the constitutional law affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains

5

it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

21.    Petitioner Steven Rodriguez Acetuno has been in ICE custody since November 9, 2025, when he was arrested in New York.

22.    Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

23.    Respondent Markwayne Mullin is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

24.    Respondent Todd Blanche is the Attorney General of the United States Department of Justice. He is a legal custodian of Petitioner and is named in his official capacity.

25.    Respondent Mary De Anda-Ybarra is the Acting Field Office Director for the El Paso Field Office, which has jurisdiction over the Cibola County Correctional Center, for ICE within DHS. In that capacity, Field Director De Anda-Ybarra has supervisory authority over the ICE agents responsible for detaining Petitioner. The address for the El Paso Field Office is 999 S Oregon St, El Paso, TX 79901.

26.    Respondent George Dedos is the Warden of the Cibola County Correctional Center, where Mr. Rodriguez Acetuno is detained. He has immediate physical custody of Mr. Rodriguez Acetuno. Respondent Dedos is sued in his official capacity

6

**RELEVANT FACTS & PROCEDURAL HISTORY**

27.    Mr. Rodriguez Acetuno is a resident of California, and a citizen of Honduras. Mr. Rodriguez Acetuno has lived in the United States since 2016 after entering the United States as a minor with his mother and siblings, being apprehended, then released on his own recognizance.

28.    Because Mr. Rodriguez Acetuno was a minor when he entered the United States, his mother filed a petition for asylum for herself and her children, including Mr. Rodriguez Acetuno.

29.    Mr. Rodriguez Acetuno's merits hearing is scheduled for April 27, 2026.

30.    Mr. Rodriguez Acetuno lives in Stanton, California with his mother and siblings.

31.    Mr. Rodriguez Acetuno is an active member of his community. He graduated from high school less than one year ago in May 2025. While in high school, he played sports and sang in the choir. He often spent evenings caring for his siblings, helping them with their homework, and cooking for his family.

32.    Following his graduation, Mr. Rodriguez Acetuno enrolled in Cypress College, a public community college in Cypress, California, near his home. Mr. Rodriguez Acetuno also obtained full-time employment, working for a marketing company that markets kitchen supplies, including Cutco Knives.

33.    Mr. Rodriguez Acetuno was showing great promise at the marketing company where he worked and was selected to travel to Olean, New York for a work event. The trip was scheduled for November 6 – November 9, 2025.

34.    On or around November 9, 2025, after finishing attending the conferences, Mr. Rodriguez Acentuno and several of his colleagues went to see Niagara Falls. While at Niagara Falls, several colleagues stated they wanted to cross the Rainbow International Bridge, a bridge that connects the United States to Canada, to see the falls from the Canadian side. Mr. Rodriguez Acentuno knew he could not leave the country so knew not to exit the bridge onto the Canadian territory. Mr. Rodriguez Acentuno stepped onto the bridge with his colleagues, took photos of the falls, and when his colleagues proceeded into Canada, he turned around to walk the way he came.

35.    Mr. Rodriguez Acentuno was stopped by Border Patrol when attempting to exit the bridge. Even after reviewing his work permit and social security card, which demonstrated his eligibility to be in the U.S., border patrol agents detained Mr. Rodriguez Acetuno. They did not present Mr. Rodriguez Acetuno with a warrant, nor cite a statutory basis for his detention at that time.

36.    Mr. Rodriguez Acetuno does not have a criminal record.

37.    The border patrol agents did not present Mr. Rodriguez Acetuno with a warrant, nor cite a statutory basis for his detention at that time.

38.    Mr. Rodriguez Acetuno was transferred to the Buffalo (Batavia) Service Processing Center in Batavia, New York and was subsequently transferred to the Cibola County Correctional Center, where he remains today.

39.    Mr. Rodriguez Acetuno poses no risk to society and has strong connections to his community in California, and particularly to work, school, and familial community. Mr. Rodriguez Acetuno respectfully seeks the opportunity to return to his home in

8

California, and to continue following the legal processes set up by Congress and DHS for immigrants to seek status in this country.

## CAUSES OF ACTION

### FIRST CLAIM
### Violation of the Due Process Clause of the
### Fifth Amendment to the US. Constitution
### Procedural Due Process

40.     Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

41.     Even "[w]hen government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Salerno*, 481 U.S. at 746.

42.     Federal courts use the three-part test in *Matthews v. Eldridge* to determine whether civil detention violates a detainee's due process rights. 424 U.S. 319 (1976). The elements of this test are: (1) the private interest that the official action affects; (2) the risk that the procedures used will result in an erroneous deprivation of the private interest, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest in following the existing procedures, both in achieving their objectives and in the potential burdens of an alternate procedure. *Id*. at 335.

43.     Here, all three factors favor Mr. Rodriguez Acetuno.

44.     **First**, Mr. Rodriguez Acetuno has a significant private interest at stake. A person's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004);

9

see also *Zadvydas*, 533 U.S. at 690, 121 S.Ct. 2491 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Mr. Rodriguez Acetuno currently experiences the gambit of deprivations that come with physical detention.

45.    **Second**, Mr. Rodriguez Acetuno will continue to be deprived of this interest if the current procedure (detaining Petitioner without a hearing) is followed. Mr. Rodriguez Acetuno has a strong likelihood of meeting the criteria for being released on bond. 8 CFR §§236.1(c)(8), 1236.1(c)(8) (2020); *In re Adeniji*, 22 I. & N. Dec. 1102, 1113 (BIA 1999). Mr. Rodriguez Acetuno has no criminal history, has a stable address where he lives with his mother and siblings, has a full-time job, and is attending college. Even if Mr. Rodriguez Acetuno is not subsequently released, Mr. Rodriguez Acetuno still has a legal and constitutional interest in the hearing itself, in being heard.

46.    **Third**, the Government has no legitimate interest in refusing to follow its own rules. Mr. Rodriguez Acetuno has no criminal record and poses no safety threats to the community. Releasing Mr. Rodriguez Acetuno, or holding a hearing to release Mr. Rodriguez Acetuno on bond, would in fact *save* the government the resources and expense of continuing to imprison Mr. Rodriguez Acetuno.

**SECOND CLAIM**
**Violation of the Due Process Clause of the**
**Fifth Amendment to the U.S. Constitution**
**Substantive Due Process**

47.    Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

10

48.     The Supreme Court has long recognized that noncitizens physically present in the United States are entitled to due process protections, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976). And "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

49.     Because "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception," the government may imprison people as a preventive measure only within strict limits. *Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).

50.     Immigration detention is civil detention and must "bear a reasonable relation to the purpose for which the individual was committed" so that it remains "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690 (citation modified); *see also Schall v. Martin*, 467 U.S. 253, 264-69 (1984) (finding detention must be a proportional—not excessive—response to a legitimate state objective).

51.     Courts have identified only two legitimate purposes for immigration detention: mitigating flight risk pending removal and preventing danger to the community. *See Zadvydas*, 533 U.S. at 690-91.

52.     To satisfy substantive due process under the Fifth Amendment, a noncitizen's detention must be tied to flight risk or a danger to the community. *Zadvydas*, 533 U.S. at 690.

11

53.    Neither purpose is served by Mr. Rodriguez Acetuno's detention. Respondents have not made any claim that Mr. Rodriguez Acetuno presents a flight risk or a danger to the community, nor could they.

54.    Since his entry to the United States, Mr. Rodriguez Acetuno's ties to this country have only grown stronger. He has a family here, is integrated in his cultural community, works, attends school, and has a pending asylum application. *See Osorio*, 893 F. 3d at 173-75.

55.    Because the government is not detaining Mr. Rodriguez Acetuno to serve legitimate interests in protecting against danger or flight risk, his detention violates substantive due process under the Fifth Amendment, and this Court should order his immediate release.

## THIRD CLAIM
### Violation of the Fourth Amendment to the U.S. Constitution, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.3(d) Unlawful Arrest

56.    Petitioner repeats and re-alleges the allegations contained in all preceding paragraphs of this Petition as if fully set forth herein.

57.    The Fourth Amendment protects "[t]he right of the people to be secure in their persons…against unreasonable searches and seizures." U.S. Const. Amend. IV. Immigration arrests and detentions are seizures within the meaning of the Fourth Amendment. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1044 (1984) (acknowledging that deportation proceedings are civil, but the Fourth Amendment still applies to the "seizure" of the person).

12

58.    As a general matter, the Fourth Amendment requires that all arrests entail a neutral, judicial determination of probable cause. *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). "Probable cause requires a 'substantial probability; based on facts related to the individual." *Ramirez Ovando v. Noem*, No. 25-cv-03183, 2025 WL 3293467, at *15 (D. Colo. Nov. 25, 2025) (quoting *Storey v. Taylor*, 696 F.3d 987, 992 (10th Cir. 2012) (finding probable cause for immigration arrests lacking); *U.S. v. Williams*, No. 19-cr-325, 2020 WL 4228095 (D. Minn. May 13, 2020), report and recommendation adopted, 2020 WL 4226865 (July 23, 2020). That determination can occur either before the arrest, in the form of a warrant, or promptly afterward, in the form of a prompt judicial probable cause determination. *See Gerstein*, 420 U.S. at 125. It must, however, occur within 48 hours of detention, which includes weekends, unless there is a bona fide emergency or other extraordinary circumstance. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 57 (1991).

59.    There is a strong preference that immigration arrests be based on warrants. *See Arizona v. U.S.*, 567 U.S. 387, 407–08 (2012). The INA thus provides immigration agents with only limited authority to conduct warrantless arrests. 8 U.S.C. § 1357(a)(2). Specifically, an officer must have probable cause to believe the person is violating the immigration laws *and* that the person "is likely to escape before a warrant can be obtained," *i.e.*, is a flight risk. *Id.*; *see also Ramirez Ovando*, 2025 WL 3293467, at *2. Federal regulations track the strict limitations on warrantless arrests. *See* 8 C.F.R. § 287.8(c)(2)(ii).

60.    Mr. Rodriguez Acetuno's warrantless detention occurred without probable cause that he was a flight risk. "Courts have…made the self-evident finding that the likelihood of escape is lower when the individual has resided in the country for a lengthy

13

period of time and has strong community ties." *Escobar Molina v. U.S. Dep't of Homeland Sec.,* No. 25-cv-3417, 2025 WL 3465518, at \*13 (D.D.C. Dec. 2, 2025) (collecting cases). At the moment of his seizure, Mr. Rodriguez Acetuno (a) was living in a stable home with family in California; (b) was integrated in his community; (c) had full time employment; (d) was enrolled in college courses; (e) had been in the United States for ten years and f) had a pending asylum application. Therefore, no officer could have probable cause that he was likely to escape before a warrant could be obtained.

61.    Without a statutory basis to arrest, Respondents were required under the Fourth Amendment to secure a prompt judicial probable cause determination to continue holding Mr. Rodriguez Acetuno. *Gerstein*, 420 U.S. at 114; *Valdovinos v. Noem et al.*, No. 1:26-cv-0338 JB/DLM, 2026 WL 948285, at \*5 (D.N.M. Apr. 8, 2026) (where DHS lacks statutory authority to arrest an individual without a warrant, the government is required to obtain a prompt judicial probable-cause determination); *McLaughlin*, 500 U.S. at 56–57. He has thus far received no such judicial determination, and Respondents' recent practice has been to extend such detentions well beyond 48 hours, rendering it presumptively unconstitutional.

62.    Regulations also provide that noncitizens arrested without a warrant must receive a custody determination within 48 hours of the arrest, unless there is "an emergency or other extraordinary circumstance" that requires "an additional reasonable period of time" to make the custody determination. 8 C.F.R. § 287.3(d). During that custody determination, the immigration officer must make findings as to whether "release would not pose a danger to property or persons, and that the alien is likely to appear for any future

14

proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). Similarly, upon information and belief, Petitioner received no such custody determination within those first 48 hours.

63.    Respondents' warrantless arrest of Petitioner, and their refusal to provide a prompt probable cause determination, violated the Fourth Amendment. Thus, this Court should order his release.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

a.  Enjoin Respondents from transferring Petitioner out of this District during the pendency of this Petition;

b.  Declare that Petitioner's arrest and detention violate the Due Process Clause of the Fifth Amendment; and the Fourth Amendment;

c.  Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody without restraints on his liberty beyond those that existed prior to his unlawful re-detention;

d.  Alternatively, issue a Writ of Habeas Corpus requiring Respondents to release Petitioner immediately unless they provide a bond hearing at which hearing Respondents will bear the burden of justifying Petitioner's continued detention by clear and convincing evidence of dangerousness or flight risk;

e.  Issue an Order prohibiting Respondents from seeking a stay of any order granting bond by the Immigration Judge, including by filing a form EOIR-43 (Notice of Service Intent to Appeal Custody

15

Redetermination) or a motion for emergency stay;

f.  Issue an Order to Show Cause ordering Respondents to explain why this Petition should not be granted within three days, and set a hearing on this Petition within five days of the return, as required by 28 USC § 2243;

g.  Order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before this Court where the government bears the burden of justifying re-detention by clear and convincing evidence;

h.  Grant bail pending the conclusion of the habeas review; *see, e.g.*, *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001);

i.  Order that Petitioner may move to recover attorneys' fees and costs under the Equal Access to Justice Act;

j.  Grant such further relief as this Court deems just and proper.

Dated: April 21, 2026                    Respectfully submitted,

/s/ Mary M Nikolai
Mary M. Nikolai
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
mnikolai@gustafsongluek.com

*Attorney for Petitioner*

16

**VERIFICATION BY SOMEONE ACTING ON PETITIONER'S BEHALF
PURSUANT TO 28 U.S.C. 2242**

I am submitting this verification on behalf of Petitioner because his current detention makes him unable to submit one on his own behalf. I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: April 21, 2026                                      /s/ Mary M. Nikolai
                                                           Mary M. Nikolai